**Joe M. FLOURNOY, Chapter 13 Trustee, Plaintiff,**

**v.**

**Hon. Robert F. HERSHNER, Jr., Chief Bankruptcy Judge, Defendant.**

**Civ. A. No. 86–210–3–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 21, 1986.

Order on attorney fees Dec. 18, 1986.

Charles C. Carter, Columbus, Ga., for plaintiff.

Jack B. Hood, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

By order dated October 19, 1979, Joe M. Flournoy of Columbus, Georgia, was re-appointed as standing trustee for Chapter 13 cases filed in the Columbus, Albany, Americus, Thomasville, and Valdosta Divisions of the Bankruptcy Court of this United States District Court. Mr. Flournoy served until July 21, 1986, the date on which, by order of Chief Bankruptcy Judge Hershner dated May 19, 1986, he was terminated as Chapter 13 trustee. Verbally and then by order, Chief Judge Hershner stated that Mr. Flournoy's removal was necessitated by the bankruptcy court's decision to consolidate its two Chapter 13 trustee operations into one operation more efficient and less costly to creditors. Mr. Flournoy neither then was nor since has been accused of misconduct.

On June 30, 1986, Mr. Flournoy petitioned the United States Court of Appeals for the Eleventh Circuit for a writ of prohibition preventing his removal as trustee. By order dated July 25, 1986, the court of appeals stated:

As we read the present petition filed with this court, petitioner seeks no relief regarding the order terminating his office as standing trustee. However, he asserts that his removal as trustee in the approximately 450 presently pending cases is unlawful because, as he alleges, the action was taken without notice and hearing as provided for in 11 U.S.C.

§ 324. Accordingly, it appears that the petitioner is seeking the review of an order of the bankruptcy judge removing him as trustee in each of these pending cases. The order of a bankruptcy judge is subject to review by the district court or, if established, a bankruptcy appellate panel. 28 U.S.C. § 158. This controversy is therefore improperly brought initially to this court.

This premise considered, IT IS ORDERED that this petition is transferred to the United States District Court for the Middle District of Georgia. Whether or not review there ought to be by petition for extraordinary writ or by appeal may be decided by that court.

*In Re: Joe M. Flournoy,* No. 86–8505, slip op. at 2 (11th Cir. July 25, 1986).

After transfer, several evidentiary hearings were held and the parties were heard from orally and in writing. Mr. Flournoy has been represented by Charles C. Carter of Columbus, Georgia, and Chief Judge Hershner has been represented by United States Attorney Joe D. Whitley and Assistant United States Attorney Jack Hood.

By order dated August 20, 1986 [Available on WESTLAW, FBKR–CS database], this court stated:

Mr. Flournoy does not challenge his removal as standing trustee in future Chapter 13 cases, but instead challenges only his removal as trustee in the approximately 450 cases that were then pending and in which he was serving as trustee. Memorandum in Support of Application for Writ at 2.

Congress has provided that "[t]he court, after notice and a hearing, may remove a trustee or an examiner, for cause." 11 U.S.C.A. § 324 (West 1979). Section 324 expressly applies to Chapter 13 trustees. *Id.* § 103(a).

The bankruptcy judge argues that he gave Mr. Flournoy notice at a conference held April 22, 1986, and by the order of May 19, 1986, and that he was given a hearing at the conference. Respondent's memorandum at 9. On April 15, 1986,

the bankruptcy judge sent the following letter to Mr. Flournoy:

In accordance with her statutory duties, Mrs. Cecelia M. Lewis, since assuming her duties as Clerk of Court, has been reviewing the operation of each of the Court's trustees. Enclosed you will find a copy of her report to me on you as the Court's standing Chapter 13 trustee for the Columbus, Albany, Valdosta, and Thomasville Divisions. I will be in the Columbus Court on April 22, 1986, and I would appreciate your coming to Chambers at 9:00 a.m. to discuss Mrs. Lewis' report.

The clerk's report, which was mailed to Mr. Flournoy with the letter, also did not even intimate the possibility that he would be removed as trustee. It thus presently appears that Mr. Flournoy received no notice prior to his April 22nd conference with the bankruptcy judge. Assuming that the April 22nd conference was a § 324 hearing as the bankruptcy judge contends, Mr. Flournoy did not receive the required notice. Accordingly, his removal was improper under 11 U.S.C. § 324.

The parties are hereby notified that this court will hold a hearing at 11:00 a.m. on Monday, August 25, 1986, to determine whether there is cause to remove Mr. Flournoy as trustee in the 450 Chapter 13 cases discussed earlier. *See United States v. Bosch,* No. 85–5349 (6th Cir. July 15, 1986) (opinion available on Lexis), [798 F.2d 1417].

Prior to August 25th, Mr. Flournoy's attorney orally advised the court and opposing counsel that since the court had agreed in principle with Mr. Flournoy's contention that he was removed without the required 11 U.S.C. § 324 notice and hearing, Mr. Flournoy wished to resign effective close of business July 21, 1986, without prejudice to the resolution of his claims as trustee for past compensation and expenses; future compensation on all cases pending on July 21, 1986; and attorneys fees. That made it unnecessary to hold the section 324 hearing.

With the assent of the parties, the court requested the Administrative Office of the United States Courts to assist in resolving the remaining issues by sending an experienced bankruptcy attorney to confer with the attorneys for the parties, investigate the facts, and recommend a basis for resolution to the court and counsel. On Monday, September 29, 1986, Mr. William C. Redden, an attorney-advisor in the Bankruptcy Division of the Administrative Office, met with Messrs. Carter and Hood in Columbus and then reported to the court on possible areas of agreement between the parties. That, unfortunately, did not resolve the remaining disputes.

Mr. Flournoy's attorney, by motion to determine compensation filed September 19, 1986, confirmed that the sole remaining issues to be decided by this court are:

(1) The amount of all fees earned by petitioner up to the date of his resignation, which remain due and unpaid.

(2) The amount of all expenses paid by petitioner on account of his position as Chapter 13 Trustee, on account of the payment of which he is entitled to be reimbursed.

(3) The amount of all fees and expenses due and owing to petitioner, with respect to Chapter 13 collections subsequent to the date of his resignation.

(4) The amount of a reasonable attorney's fee, as may be established as provided by law, to be awarded to petitioner pursuant to the Equal Access to Justice Act.

Motion to determine compensation, filed September 19, 1986.

The respondent agreed that the remaining issues are as stated; disagreed as to the amounts claimed under issues (1) and (2); denied that Mr. Flournoy is owed anything under issue (3); contended that attorneys fees are not awardable; and, asserted some offsetting claims against Mr. Flournoy.

Due to Mr. Flournoy's absence on a long planned vacation, a hearing on the remaining issues was postponed until October 30, 1986. On that date the court received addi-

tional evidence and heard the further contentions of the parties.

*Offsetting Claims*

■ At the conclusion of the October 30th hearing the court, after argument, advised the parties that there is no basis for respondent's claim that Mr. Flournoy as trustee should be required to reimburse the court for $1,640.22 paid Mr. Flournoy's step-daughter for services she actually performed for him as trustee and for which she was not over-compensated. The court further advised that some $11,000.00 spent in converting Mr. Flournoy's records and bookkeeping system to the system used by the court's other Chapter 13 trustee, could not be charged to Mr. Flournoy since prior to the time of consolidation this court and the Administrative Office of the Courts had approved his bookkeeping system. The change over therefore did not result from Mr. Flournoy failing to maintain his books and records in an approved manner. It resulted from his approved system being different from the approved system utilized by the court's other trustee.

■ Mr. Flournoy agrees that having rented a computer he owned to the plan, repairs were his personal responsibility; therefore, he and not the Chapter 13 plan should have paid those repairs. He has or if he has not, he will reimburse the plan for such amounts. He also agrees to reimburse the plan for NACTT dues which he personally should have paid.

*Compensation and Expenses
Through July 21, 1986*

The October 19, 1979, order appointing Mr. Flournoy as trustee specifies his compensation and expenses to be paid as follows:

IT IS FURTHER ORDERED:

1. that the trustee's compensation (11 U.S.C. 1302) is fixed at *five percent (5%) upon all payments under plans* in cases under Chapter 13 for which said Joe M. Flournoy serves as standing trustee;

2. that the expenses for said Chapter 13 Trustee is fixed at *five percent (5%) upon all payments under plans* in cases under Chapter 13 for which said Joe M. Flournoy serves as standing trustee;

3. that in no event shall the Chapter 13 Trustee's compensation and allowance for expenses exceed the maximum allowable under 11 U.S.C. 1302;

\* \* \* \* \* \*

7. that the Chapter 13 Trustee employ and pay from his expense allowance a competent Certified Public Accountant to prepare and deliver to the Bankruptcy Judge a complete and detailed audit of the books and records of the Chapter 13 cases administered by the Chapter 13 Trustee, said audit to be as of the close of business on June 30th of each year and be delivered to the Bankruptcy Judge by August 1st of each year.

(emphasis added).

■ Mr. Flournoy is entitled to be paid through and including July 21, 1986, as he was being paid prior to the respondent's order of removal and in accordance with the December 19, 1979, order. During the change over, expenses that would normally have been paid by Mr. Flournoy as trustee were actually paid by the court's other trustee. Anything that Mr. Flournoy as trustee would normally have paid but did not pay is to be charged to his trustee expense account.

■ The required annual audit has not been completed. To the extent that the scope of the audit does not exceed what has been usually required in past years, the expense is to be charged to Mr. Flournoy's trustee expense account. Increased audit costs, if any, caused by the consolidation are not to be charged to said account.

*Future Compensation on Collections
Subsequent to July 21, 1986, on
Cases Turned Over to Other Trustee*

■ Mr. Flournoy contends that equitably he should share in trustee commissions on future payments under plans he turned

over to the court's other trustee. As Mr. Flournoy stated by letter of November 3, 1986:

I will be disappointed if I am not awarded an equitable share of trustee commission received after July 21, due to the disproportionate time and effort required in taking a case from filing thru confirmation. Collecting and disbursing after confirmation is routine computer and clerical work.

As sympathetic as this court is to Mr. Flournoy's plea, the court's authority to award him future compensation for having served as trustee in cases that were turned over to the court's other trustee, is no greater than is set forth in the said October 19, 1979, order of appointment which provides:

8. that upon the death of said Chapter 13 Trustee or upon the filing of an order by this Court relieving Joe M. Flournoy from his duties as the Chapter 13 Trustee, neither he nor his heirs, executors, administrators or assigns or any personal representative shall have any right, title, interest, claim or demand upon any commissions or expenses accruing after the date of the death of Joe M. Flournoy or after the date of the order relieving him from his duties as Chapter 13 Trustee.

Mr. Flournoy served as trustee under that order in general and that paragraph in particular with respect to future claims. It clearly and unambiguously forecloses all claims for future compensation.

### Interest Float Account

■ Mr. Flournoy also claims 10% of the interest float account. As he states by letter of November 3, 1986:

I also believe the trustee is entitled to 10% of the interest float account, $1,800.00 on $18,000.00. The attorney for the U.S. Trustee has ruled the trustee can utilize the interest float to cover expenses over 5%, but not the attorney for the administration office who at last report had limited it to 10% (5% commis-

sion and 5% expense on moneys received).

The previously quoted paragraphs 1 and 2 of the said October 19, 1979, order provide for compensation "at five percent (5%) upon all payments" and expenses "at five percent (5%) upon all payments." No mention is made of compensation or expenses being paid upon interest earned upon plan payments. Neither compensation nor expenses can therefore be awarded upon interest earned upon plan payments. All such interest belongs to the Chapter 13 plan.

### Computation of Sums Due

At such time as the required audit has been completed and received, the parties hopefully will be able to apply the general findings made herein to the specific monetary figures disclosed by the audit and to agree upon the amount to be paid Mr. Flournoy. Within 10 days of the filing of said audit the parties shall report to the court as to their ability or inability to agree, at which time the court will give the matter further direction.

### Attorney's Fees

Finally, the court must consider Mr. Flournoy's contention that he is entitled to an award of attorney's fees in this matter pursuant to the Equal Access to Justice Act, 28 U.S.C.A. § 2412(d)(1)(A), (B) (West Supp.1986) (hereinafter "EAJA"). The United States Attorney for the Middle District of Georgia, responding on Judge Hershner's behalf, maintains that Mr. Flournoy is not entitled to an EAJA award because: (1) the government's position in this matter is and has been substantially justified; (2) petitioner is not a prevailing party within the meaning of the EAJA; (3) "this matter has not been an adversary proceeding from the beginning;" and (4) no one has opposed petitioner's receipt of any compensation lawfully due him. Response to petitioner's motion to determine compensation at 2, filed October 3, 1986. Neither respondent nor petitioner cites any authority in support of his position.

The Equal Access to Justice Act is a waiver of sovereign immunity and as such must be strictly construed. *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1494 (11th Cir.1986). Therefore, the court should not make an EAJA award of attorney's fees unless it is clear that such an award is authorized by both the express statutory language of the EAJA and the relevant facts. Such is not the case here. Because the court is uncertain as to whether or not the EAJA authorizes an award of attorney's fees in the present matter, it declines to rule on the propriety of such an award at this time. Instead, the parties are directed to file simultaneous briefs within ten days of date of this order addressing the issue of whether attorney's fees are properly awardable pursuant to the EAJA or any other statute. Each party will then have five days to respond to the other's legal arguments as contemplated by the local rules of this court.

*Conclusion*

As discussed heretofore, the court finds that Mr. Flournoy is entitled to compensation and expenses through and including July 21, 1986, on the basis set forth in the October 19, 1979, order appointing him as trustee. Mr. Flournoy's claims to future compensation and ten percent (10%) of the interest float account are likewise controlled and foreclosed by the explicit terms of the October 19, 1979, order of appointment. However, the court reserves ruling on attorney's fees until such time as the parties have further and fully briefed the issue of counsel's statutory entitlement to fees in this matter.

In conclusion, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the undersigned judge hereby directs entry of final judgment upon this order and the issues resolved herein with respect to Mr. Flournoy's entitlement to compensation. The undersigned expressly determines that the only remaining issues in this case, *i.e.*, the actual computation of sums due and the propriety of an award of attorney's fees, do not constitute just reason for delay and accordingly expressly directs the entry of such judgment. Fed.R.Civ.P. 54(b).

ORDER ON ATTORNEY FEES

This matter comes before the court for resolution of the only remaining issue raised by petitioner's motion to determine compensation: whether petitioner is entitled to an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C.A. § 2412(d) (West Supp.1986) (hereinafter EAJA)[1] on the unique facts of this case. Petitioner's contention that he is entitled to fees rests solely on the EAJA which must be strictly construed since it is a waiver of sovereign immunity. *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1494 (11th Cir.1986). Despite the court's concern that petitioner has incurred legal fees in pursuing this matter, it concludes that an award of fees under the EAJA would be inappropriate given the novel facts before it.

Petitioner chose to initiate this matter by filing a petition for writ of prohibition in

1. The EAJA provides in relevant part:
   (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
   (3) In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, or an adversary adjudication subject to the Contract Disputes Act of 1978, the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.
   28 U.S.C.A. § 2412(d)(1)(A), (3) (West Supp. 1986).

the United States Court of Appeals for the Eleventh Circuit. That court transferred the matter to this court stating:

it appears that the petitioner is *seeking the review of an order of the bankruptcy judge removing him as trustee in each of these pending cases.* The order of a bankruptcy judge is subject to review by the district court or, if established, a bankruptcy appellate panel. 28 U.S.C. § 158. This controversy is therefore improperly brought initially to this court.

The premise considered, IT IS ORDERED that this petition is transferred to the United States District Court for the Middle District of Georgia. *Whether or not review there ought to be by petition for extraordinary writ or by appeal may be decided by that court.*

*In Re: Joe M. Flournoy,* No. 86–8505, slip op. at 2 (11th Cir. July 25, 1986) (emphasis added).

▉ If this court construes the present matter to be an appeal seeking review of an order of the bankruptcy judge pursuant to 28 U.S.C. § 158, it would not constitute a civil action brought by or against the United States within the meaning of the EAJA. In this regard, petitioner's own explanation of his method of proceeding is most illuminating. Petitioner states:

In theory, petitioner could possibly obtain review of this order by four methods. First, he could appeal directly to the District Court. Second, he could appeal to the District Court by means of an independent civil action. Third, he could appeal the order by filing a direct appeal to the Court of Appeals. Finally, he could seek review by filing an application for extraordinary writ. This discussion is not intended to exhaustively analyse these four methods, but to indicate problems inherent in the first three, and the advantages of the fourth.

\*    \*    \*    \*    \*    \*

With respect to the second method, *review of these orders by action would*

*not seem appropriate.* Rule 81(b), F.R. C.P., abolishes writs of mandamous [sic] and provides that relief may be obtained by action. The District Court has no authority to issue a writ where mandamous [sic] is the only relief sought. *Newark Morning Ledger Company v. Republican Company,* 188 F.Supp. 813 (D.C.Mass., 1960), *Moye v. Clerk, Superior Court,* 474 F.2d 1275 (5th Cir., 1973). The essence of the relief previously sought by application for extraordinary writ is by civil action, *which in this case, would result in a civil action by petitioner against the Bankruptcy Judge in the District Court.* As the bankruptcy judge's authority is derived from the District Court, and as orders by bankruptcy judges are entered, by reference, in the District Court, the filing of a civil action by petitioner would result in a suit against a judge in his own court complaining of entry of an order in that Court. *While no case on point has been found prohibiting the filing of an action against a judge in his own Court, petitioner has very serious intuitive doubts about the propriety of that course of action.*

\*    \*    \*    \*    \*    \*

Considering the problems inherent in the first three methods of proceeding, and the acceptability of the fourth method, petitioner felt that the proper method of complaining of entry of the Bankruptcy Judge's orders was by means of filing an application for an extraordinary writ in the Court of Appeals. Petitioner submits that the application was proper, and was within the lawful jurisdiction of the Court.

Petitioner's memorandum in support of application for writ at 8–11 (filed August 5, 1986) (emphasis added). Thus petitioner concedes that he did not elect to proceed in this matter by filing an independent civil action against the bankruptcy judge.

The EAJA's express statutory language signifies Congressional intent to authorize

awards of attorney's fees in civil actions brought by or against the United States and agency adversary adjudications. *See* 28 U.S.C. § 2412(a), (b), (d)(1)(A), (d)(3). Because this court finds that the instant matter constitutes an appeal of an order of the bankruptcy judge pursuant to 28 U.S.C. § 158 in that it directly affected all pending Chapter 13 cases in the Columbus, Albany/Americus, Valdosta and Thomasville Divisions of the bankruptcy court, the EAJA does not apply.

Alternatively, assuming *arguendo* that the EAJA does apply herein, the court believes that special circumstances exist which make an award of fees unjust. This court is aware of no reported decisions awarding attorney's fees under the EAJA against the Administrative Office of the United States Courts, the agency that would presumably bear the responsibility for such fees, due to the allegedly improper internal, administrative employment decision of a sitting federal judge acting in his official capacity. Petitioner cites no such precedent.

The EAJA itself in section 2412(d)(3) specifically exempts agency administrative adjudications involving "the selection or tenure of an employee." 5 U.S.C. § 554(a)(2); *see also Hoska v. United States Department of the Army*, 694 F.2d 270 (D.C.Cir. 1982). This matter clearly relates to an internal, administrative personnel decision—the Chief Bankruptcy Judge's decision to consolidate all Chapter 13 cases under one standing Chapter 13 trustee which entailed removing petitioner as standing trustee. While this court sympathizes with petitioner, Congress has evidenced its intent to exclude some federal agency personnel decisions from the reach of attorney fee statutes. Accordingly, this court concludes by analogy that the unique and unusual facts of this case fall with the special circumstances exception that renders an award of attorney's fees unjust, assuming *arguendo* that the EAJA is applicable.