**SECURITIES AND EXCHANGE COMMISSION & Commodity Futures Trading Commission, Plaintiffs–Appellees,**

Alan M. Cohen, Receiver–Appellee,

v.

Martin A. ARMSTRONG, Defendant–
Appellant,

Princeton Economics International
Ltd. & Princeton Global Man-
agement Ltd., Defendants.

Nos. 03–6080(L), 03–6084.

United States Court of Appeals,
Second Circuit.

Feb. 26, 2004.

Thomas V. Sjoblom, Chadborne & Parke
LLP, New York, NY, for Appellant.

Katherine B. Gresham, Assistant Gener-
al Counsel (Giovanni P. Prezioso, General
Counsel), Washington, DC, for PlaintiffAp-
pellee Securities and Exchange Commis-
sion.

Nancy R. Page, Assistant General Coun-
sel, (Patrick J. McCarty, General Counsel),
Washington, DC, for Plaintiff–Appellee
Commodity Futures Trading Commission.

Martin Glenn, O'Melveny & Myers (Tan-
cred V. Schiavoni, on the brief), New York,
NY, for Receiver–Appellee, Alan M. Co-
hen.

Present: WALKER, Chief Judge,
CALABRESI, and CABRANES, Circuit
Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS
HEREBY ORDERED, ADJUDGED
AND DECREED** that the appeal is **DIS-
MISSED** for lack of appellate jurisdiction.

We assume familiarity with the facts and
procedural history of this protracted litiga-

tion. *See Sec. Exch. Comm'n v. Princeton
Economic Int'l Ltd.*, 7 Fed.Appx. 65 (2d
Cir.2001) (unpublished opinion) ("*Arm-
strong I*"); *Commodity Futures Trading
Comm'n v. Armstrong*, 269 F.3d 109 (2d
Cir.2001) (motions panel) ("*Armstrong
II*"); *Commodity Futures Trading
Comm'n v. Armstrong*, 284 F.3d 404 (2d
Cir.2002) (per curiam) ("*Armstrong III*").

In January 29, 2003 and June 19, 2003
hearings, the district court determined
that, notwithstanding the additional pas-
sage of time, the civil contempt order
continued to have a coercive effect on de-
fendant-appellant Martin Armstrong.
Specifically, it found that Armstrong still
had produced no evidence that he had at-
tempted to or was unable to comply with
the turn over order.

We lack jurisdiction over this appeal
unless we find that Armstrong's confine-
ment has become punitive rather than co-
ercive, effectively converting the district
court's order into a final, appealable order
for criminal contempt. *Pro–Choice Net-
work of W.N.Y. v. Walker*, 994 F.2d 989,
994 (2d Cir.1993); *Simkin v. United
States*, 715 F.2d 34, 36–37 (2d Cir.1983).
As we have previously stated, "in distin-
guishing criminal and civil contempt sanc-
tions, we inquire whether the sanction's
purpose was to coerce compliance and
whether the contemnor was given the op-
portunity to cure his contempt and thereby
end the sanction." *Armstrong III*, 284
F.3d at 406 (internal quotation marks
omitted).

Our review of the district court's individ-
ualized finding is deferential; indeed, we
afford the district court "virtually unre-
viewable discretion both as to the proce-
dure [it] will use to reach [its] conclusion,
and as to the merits of [its] conclusion."
*Simkin*, 715 F.2d at 38 (footnote omitted).

As we stated in *Armstrong III*, "Arm-
strong had the burden of producing evi-

dence to show that he cannot comply with the order," 284 F.3d at 406; *see also Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995) ("the alleged contemnor's burden is to establish his inability [to comply] clearly, plainly and unmistakably"). And, on this appeal, Armstrong does not challenge the district court's finding or cite to any new evidence that would have suggested to the district court that he could not comply with the turn-over order. Rather, he argues that the length of his confinement (now nearing four years) combined with his repeated declarations that he will not comply with the turn-over order, compel the conclusion that, in fact, he will never comply; thus he maintains that the contempt order has lost its coercive effect. This argument rests largely on Armstrong's belief that (1) the underlying turn-over order violates his Fifth Amendment privilege against self-incrimination and (2) 28 U.S.C. § 1826 (the so-called "recalcitrant witness statute") limits confinement for civil contempt to 18 months— However, since we lack jurisdiction over this interlocutory appeal from a civil contempt order, we cannot review the merits of these arguments.

In sum, the record reveals that the district court continues to "conscientious[ly] consider[ ]" Armstrong's individual circumstances, *Simkin,* 715 F.2d at 37, and has heeded our requirement that it make "a careful reassessment of [the] coercive potential" of the contempt order. *Armstrong III,* 284 F.3d at 406. Indeed, at each hearing, it has considered all of the relevant factors and determined that there was a "realistic possibility that Armstrong w[ould] comply," *Id.* citing *Simkin,* 715 F.2d at 37.

We conclude, therefore, that the district court did not abuse its discretion by continuing Armstrong's confinement and we dismiss for lack of appellate jurisdiction without prejudice to any remedy under § 2241 or 2255. We base this decision, in part, on our belief that a ruling squarely addressing the merits of Armstrong's arguments will streamline the ultimate resolution of this case.

We see no reason to foreclose the availability of collateral relief to an individual who is incarcerated pursuant to a federal civil contempt order. *See* 28 U.S.C. 2241(c) (2003); *Duncan v. Walker,* 533 U.S. 167, 176, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (noting that federal habeas corpus review may be available to challenge the legality of a state court order of civil contempt); *cf. Martin–Trigona v. Shiff,* 702 F.2d 380, 387–89 (2d Cir.1983) (holding that habeas corpus relief is not available for a petitioner incarcerated pursuant to Bankruptcy Court's civil contempt order where petitioner did not first exhaust remedies on direct appeal by appealing contempt order to district court). However, we need not decide the status of such a habeas remedy today because Armstrong has not yet petitioned the district court directly for habeas corpus relief on the basis of his Fifth Amendment or 28 U.S.C. 1826 arguments nor developed a record below. Accordingly, those issues are not, at this juncture, properly before us. *See* Fed. R.App. P. 22(a).

For the foregoing reasons, the appeal is **DISMISSED** for lack of appellate jurisdiction.