[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15558
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-04139-WSD


VITO J. FENELLO, JR.,
BEVERLY H. FENELLO,

                                                        Plaintiffs-Appellants,


versus


BANK OF AMERICA, NA,
THE BANK OF NEW YORK MELLON,
as Trustee for CWALT, Inc.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 12, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

In 2008 Vito Fenello, Jr., and Beverly Fenello stopped making payments on a loan they had taken out to purchase real property in Woodstock, Georgia. After Bank of America, NA, and Bank of New York Mellon tried to recover the outstanding balance of the loan and foreclose on the property, the Fenellos, proceeding pro se, filed a lawsuit against the banks, asserting an assortment of claims under federal and state law. The district court dismissed their complaint for failure to state a claim and denied their motion for reconsideration. This is their appeal.

## I.

In January 2007 the Fenellos purchased real property at 289 Balaban Circle in Woodstock, Georgia.[1] They funded the purchase by obtaining a loan from Pulte Mortgage LLC that was secured by a deed to the property. The security deed granted title to the property to Mortgage Electronic Registration Systems, Inc.

---

[1] Because the district court granted the defendants' motion to dismiss, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiffs. See Kobatake v. E.I. DuPont De Nemours & Co., 162 F.3d 619, 623 n.2 (11th Cir. 1998).

(MERS), as nominee for Pulte, and it included a provision giving MERS, as nominee for Pulte, the power of sale.[2]

In early 2008 the Fenellos began experiencing financial hardship, and they contacted Bank of America (their loan servicer) to discuss options for modifying their loan. Bank of America told them that they could not get mortgage relief until they had missed at least two payments, and it suggested that they skip their next two payments and then contact Bank of America about applying for relief under the Home Affordable Modification Program (HAMP). Based on that advice, the Fenellos stopped making payments on their loan. Two months later, they contacted Bank of America to apply for relief under HAMP, but they never received a decision on their application.[3] They have not made any payments on their loan since 2008.

In April 2011 MERS, as nominee for Pulte, assigned to Bank of New York Mellon (BONYM) "all right, title, interest, powers and options in, to and under [the Fenellos' security deed] as well as the land described therein and the indebtedness secured thereby." Bank of America continued to be the servicer of the loan. That same month, the Fenellos began receiving letters from a Georgia

---

[2] A power of sale clause allows a secured party to foreclose its security interest on property without resorting to relief in the courts. Black's Law Dictionary 1210 (8th ed. 2004).

[3] In June 2013 the Fenellos were offered a "Special Forbearance Agreement," which would have modified their loan. They rejected the offer, however, because it would have more than doubled their original monthly, interest-only payments.

law firm on behalf of BAC Home Loans Servicing, LP, which was a Bank of America subsidiary at the time. Those letters informed the Fenellos that BONYM was now the holder of their promissory note, that they were in default on that note, and that foreclosure proceedings were being initiated. The Fenellos responded to the law firm, writing that the promissory note had been entered into with Pulte and that they had no record of a change in the ownership of the promissory note.[4] They requested written documentation showing that BONYM was the current holder of their promissory note and that it was entitled to pursue collection and foreclosure.

Over the next several months, the Fenellos continued to receive letters from Bank of America and its lawyers on behalf of BONYM seeking to collect the debt and informing them that BONYM was starting foreclosure proceedings. In July 2011 the Fenellos sent a letter to Bank of America's customer service division, again disputing the debt and demanding evidence that BONYM was entitled to pursue the debt. They did not receive a response to this request, and they sent a similar request to Bank of America's lawyer in September 2011 after receiving another letter seeking to collect their debt. On September 19, 2011, Bank of America's lawyer responded to the Fenellos' request for proof that BONYM held

---

[4] The security deed signed by the Fenellos specifically provided that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

4

their promissory note (and was entitled to collect against it) by sending them a copy of the original promissory note that they had signed with Pulte.  The Fenellos replied that the verification was insufficient because it showed only that a debt was owed to Pulte, not BONYM, and they insisted that under the Fair Debt Collection Practices Act (FDCPA) Bank of America was required to cease its collection efforts until it provided them with proof that BONYM was entitled to pursue collections.

In October 2011 the Fenellos sued Bank of America and BONYM based on their attempts to collect the Fenellos' debt and foreclose on their property.  In their complaint, they asserted approximately 15 state and federal claims, including claims for violation of the FDCPA.  The district court dismissed all of those claims; however, it granted the Fenellos leave to amend their complaint to reassert their FDCPA claims.  It concluded that amendment would be futile as to all of the other claims, so it did not grant leave to amend the complaint as to the non-FDCPA claims.

The Fenellos filed an amended complaint in August 2012 reasserting their FDCPA claims and adding two additional claims for attempted wrongful foreclosure and negligence.  Although the Fenellos did not seek leave to assert their new claims in their amended complaint, the district court considered those claims along with the amended FDCPA claims.  It concluded that all of those

5

claims were meritless and dismissed the amended complaint.  The Fenellos filed a motion for reconsideration, which was also denied.

## II.

The only dismissed claims that merit discussion here are the Fenellos' FDCPA claims.[5]  We review de novo the district court's dismissal of claims under Federal Rule of Civil Procedure 12(b)(6).  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  The Fenellos alleged two violations of the FDCPA.  First, they alleged that Bank of America violated 15 U.S.C. § 1692g(b) when it failed to provide them with verification of their debt and failed to stop trying to collect it after they disputed the debt in writing.  Second, the Fenellos alleged that Bank of America violated 15 U.S.C § 1692f(6) by taking or threatening to take nonjudicial action to dispossess them of their property when it did not have the present right to possess the property.

With regard to their first FDCPA claim, the district court dismissed the § 1692g(b) claim after concluding that the Fenellos failed to establish that Bank of America was a "debt collector" for purposes of § 1692g(b).  The Fenellos contend

---

[5] The Fenellos have not contested the district court's dismissal of several of their federal and state claims, and they have therefore abandoned those claims on appeal.  Goodman v. Kimbrough, 718 F.3d 1325, 1336 n.5 (11th Cir. 2013); Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1335 (11th Cir. 2004).  As to all non-FDCPA claims not abandoned by the Fenellos, we affirm the dismissal of those claims based on the district court's thorough and well-reasoned opinion.

that that conclusion was erroneous because correspondence they received from Bank of America stated that it was a "debt collector" under the FDCPA and certain state laws, and they assert that Bank of America should be bound by those alleged concessions.  That argument is unavailing, however, because it rests on the fundamentally flawed assumption that a litigant can amend the definition of a statutorily-defined term.  As we have said with regard to statutorily-defined terms in another context, "[d]efinitions belong to the definers, not the defined."  See United States v. Contreras, 739 F.3d 592, 596 (11th Cir. 2014) (quotation marks omitted).  An entity cannot transform itself into a "debt collector" within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act.  See id.; Stansell v. Revolutionary Armed Forces of Colom., 704 F.3d 910, 915 (11th Cir. 2013) ("In general, statutory definitions control the meaning of a statute's terms."); see also Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1214–15, 1218–19 (11th Cir. 2012) (analyzing whether the defendant met the statutory definition of "debt collector" even though the defendant had sent the plaintiff notices "required by the Fair Debt Collection Practices Act" and stated in those notices that it was a "debt collector").  In this case, the district court correctly concluded that Bank of America was not a "debt collector" for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer.

7

See 15 U.S.C. § 1692a(6)(F); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 457 (6th Cir. 2013) (concluding that a servicer was not a "debt collector" within the meaning of the FDCPA because the defendant began servicing the loan before it was in default); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (same).  The district court did not err in dismissing the Fenellos' § 1692g(b) claim.

With regard to the Fenellos' second FDCPA claim, the district court dismissed the § 1692f(6) claim after concluding that the Fenellos had failed to allege any facts supporting the inference that BONYM did not have a present right to possession of their property.  The Fenellos respond that their complaint shows that BONYM does not have a present right to possess their property.  In the complaint and the defendants' motion to dismiss, the district court was presented with copies of (1) the original promissory note signed by the Fenellos, (2) the original security deed signed by the Fenellos, and (3) the assignment of the security deed to BONYM.[6]  Those documents established that the defendants had the right to foreclose on the property under the security deed in the event that the Fenellos defaulted on their loan.  And it is undisputed that the Fenellos have not made any payments on the promissory note since 2008.  Therefore, the defendants

---

[6] The district court was entitled to consider these documents in ruling on the defendants' motion to dismiss.  See Speaker v. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010) (noting that a court "may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged").

have the present right to possess the Fenellos' property, and the district court did

not err in dismissing the Fenellos' § 1692f(6) claim.[7]

**AFFIRMED.**

---

[7] As mentioned earlier, the district court denied the Fenellos leave to amend their complaint, except with respect to their FDCPA claims, and they now appeal that order as an abuse of discretion.  In addition, the district court denied the Fenellos' motion for reconsideration of its dismissal of their claims, and they appeal that order as well.  We conclude that the district court did not abuse its discretion in denying the Fenellos leave to amend their complaint as to their non-FDCPA claims because amendment would have been futile.  See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  The district court also did not abuse its discretion in denying the Fenellos' motion for reconsideration because they did not identify any intervening change in controlling law or newly available facts that justified reconsideration of the dismissal of their complaint, and they failed to show that the dismissal was based on clear error or resulted in manifest injustice.  Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010); see also Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010) ("The three primary grounds that justify reconsideration are:  (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.") (quotation marks omitted).